MATTER OF C—

In DEPORTATION Proceedings

A-10265782

*Decided by Board August 22, 1960*

**Expatriation—Dual national—Conclusive presumption of voluntariness.**

Respondent's United States citizenship acquired at time of birth abroad pursuant to section 1993, Revised Statutes, was lost under section 349(a)(3) of the Immigration and Nationality Act upon performance of military service in the Italian Army 1953-1955. Where the evidence establishes that at the time of his military service the respondent was a dual national of the United States and Italy who had been physically present in Italy for more than ten years, the conclusive presumption of voluntariness of the expatriating action attaching under section 349(b) of the Act precludes defense that respondent's army service was involuntary and the result of conscription.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant remained longer than permitted.

**BEFORE THE BOARD**

DISCUSSION: This case is before us on appeal from a decision of a special inquiry officer granting voluntary departure and directing that the respondent be deported if he fails to depart voluntarily.

The respondent is a 28-year-old male, native of Italy, who claims United States citizenship. His marital status is not shown in the record. He last entered the United States on February 5, 1956, and was admitted as a nonimmigrant crewman. The sole contested issue is whether the government has established that the respondent is an alien.

The respondent's father was born at Jersey City, New Jersey, on March 15, 1908, and went to Italy with his parents in 1911 where he has since resided. He was married to the respondent's mother on February 15, 1932, and the respondent was born in Italy on May 15, 1932, at which time his father was still a citizen of the United States. At birth, the respondent acquired United States citizenship under section 1993 of the Revised Statutes but the question arises whether he lost his citizenship by service in the Italian Army from May 5, 1953, to July 1, 1955. The respondent claims this service was involuntary and the result of conscription.

41

Under section 349(a) (3) of the Immigration and Nationality Act [8 U.S.C. 1481(a)(3)] a national of the United States loses his nationality by entering or serving in the armed forces of a foreign state with certain exceptions not here pertinent. Subsection (b) [8 U.S.C. 1481(b)] provides that any person who commits any act specified in subsection (a) "shall be conclusively presumed to have done so voluntarily and without having been subjected to duress of any kind, if such person at the time of the act was a national of the state in which the act was performed and had been physically present in such state for a period or periods totaling ten years or more immediately prior to such act." We previously considered this presumption in *Matter of M—G—*, 7—665 (1958). The respondent had been physically present in Italy for over ten years prior to 1953, having lived there continuously since his birth in 1932. This leaves for consideration the question of whether the respondent's case meets the other condition necessary to raise this conclusive presumption, that is, whether he was a national of Italy in 1953.

The Service takes the position that the respondent's paternal grandfather was by birth a citizen of Italy; that he never became a United States citizen; and that the respondent and his father became at birth dual nationals of the United States and Italy, Italian citizenship having been acquired under a provision of Italian law which vests such citizenship at birth in the child of an Italian citizen (Article I of the Italian Nationality Law of June 13, 1912, an English translation of which appears in *Nationality Laws* by Flournoy and Hudson, pages 363 to 367, and Article 4 of the Italian Civil Code of June 25, 1865). The respondent testified that he does not know whether his paternal grandfather ever became a United States citizen but that he was born in Italy. On June 13, 1958, the respondent's father executed before an American consular officer an application for registration as a United States citizen in which he stated that his father emigrated to the United States about 1904; that he resided continuously in the United States from 1904 to 1911; and that he was not naturalized as a citizen of the United States.

Counsel asserts that if the respondent's grandfather was naturalized as a citizen of the United States, he would have lost his Italian citizenship and the respondent and his father would not have acquired Italian nationality. Of course, it would have been necessary for the United States naturalization to have occurred prior to March 15, 1908, when the respondent's father was born in the United States. In any event, counsel does not assert that the respondent's grandfather was actually naturalized in the United States but only that he might have been. The contention of counsel is that the government must establish that the respondent's grandfather was

not naturalized during the period of his residence in the United States.

In this connection, the government presented three documents (exhs. R-1, R-2 and R-3) at the reopened hearing. Exhibit R-3 is a letter from the Italian Ministry of Foreign Affairs to the effect that the registry of Meta di Sorrento does not show that the respondent's grandfather was ever registered as a citizen of the United States. The special inquiry officer gave no weight to this exhibit and we have disregarded it. Counsel claims that there is an erroneous statement in exhibit R-2. This is a certificate by the appropriate officer of the Department of State, and we believe it is clear that there is no error in the certificate but that it means that a search was made of the passport records from 1871 through 1931 for A—C— (and three similar names), who was born in Italy on November 3, 1871, and no record was found. However, we do not rely on this certificate because, even if the respondent's grandfather had been naturalized in this country, he might have departed in 1911 without obtaining a United States passport.

The third document (exh. R-1) includes the certifications of the appropriate officers showing that the Service maintains a centralized index of all persons naturalized after September 27, 1906, and that after diligent search no record or entry has been found evidencing the United States naturalization of the respondent's grandfather. 8 U.S.C. 1360(d) specifically authorizes such a certificate concerning nonexistence of a record.

Commencing in 1824 and throughout the period of United States residence of the respondent's grandfather, there had been a requirement that an applicant for naturalization must have resided in the United States for five years (section 2165 of the Revised Statutes; section 4 of the Act of June 29, 1906, 34 Stat. 596). If the respondent's grandfather emigrated to the United States in 1904 as indicated above, then he could not have been naturalized until 1909 which would mean that the respondent's father had prior thereto acquired dual citizenship of the United States and Italy, he having been born on March 15, 1908. There is no contention that the respondent's grandfather had come to the United States at so early a date that he could have completed five years' residence before September 27, 1906, and exhibit R-1 establishes that he was not naturalized after that date.

With respect to the certification (exh. R-1) concerning the nonexistence of a record of the naturalization of the respondent's grandfather, counsel contends that a certificate of naturalization might have been issued by a state court and not reported to the Central Office of the Service. Section 3 of the Act of June 29, 1906 (34 Stat. 596) conferred exclusive jurisdiction to naturalize aliens on

certain courts and provided that "all certificates of naturalization shall be consecutively numbered and printed on safety paper" furnished by the former Bureau of Immigration and Naturalization. Section 12 of that Act made it the duty of the clerk of court to send a duplicate of each certificate of naturalization to the Bureau within 30 days after the issuance of the certificate and provided a penalty if the clerk of court failed to properly account for any certificate furnished to him by the Bureau. Section 18 made it a felony for any clerk of court to issue a certificate of naturalization except upon a final order of the court.

Counsel offered no proof to support his bare allegation that a certificate of naturalization might have been issued to the respondent's grandfather without being reported to the Central Office of the Service. We are convinced that the government has established by exhibit R-1 that the respondent's grandfather was not naturalized as a United States citizen. In addition, there is the statement of the respondent's father in exhibit 8 that his father was not naturalized as a United States citizen and the evidence showing that the respondent's grandfather could not have completed five years' residence in order that he might have obtained naturalization prior to the birth of the respondent's father.

In view of the foregoing, it is our considered opinion that the government has established by clear, convincing and unequivocal evidence that the respondent's paternal grandfather had not lost his Italian nationality prior to the birth of the respondent's father on March 15, 1908, and that the latter and this respondent acquired at birth dual nationality of the United States and Italy. Accordingly, the respondent is within the terms of the conclusive presumption set forth in 8 U.S.C. 1481(b), and we hold that he became expatriated under 8 U.S.C. 1481(a)(3) by reason of his service in the Italian Army from May 5, 1953, to July 1, 1955. Counsel conceded that the respondent was admitted to the United States on February 5, 1956, as a nonimmigrant crewman for the period his vessel remained in port, but in no event to exceed 29 days, and that he has remained in the United States beyond the authorized time. We conclude, therefore, that he is deportable on the charge stated in the order to show cause and the appeal will be dismissed.

During the oral argument, the Service representative referred to the Italian Nationality Law of June 13, 1912, *supra*, and stated that under the provisions of article IX(3) the respondent's paternal grandfather, if he had lost Italian nationality by naturalization in the United States, would have reacquired Italian nationality two years after his return to Italy in 1911. We have held that in addition to two years' residence in Italy there must be an affirmative act on the part of the naturalized United States citizen indicating a

44

voluntary acceptance of Italian nationality before loss of United States citizenship occurs (*Matter of V—*, 3—671 (1949); *Matter of R—*, 6—15 (1953); *Matter of M—*, 6—70 (1953); *Matter of M—*, 6—590 (1955)). In these decisions, the affirmative act was necessary before loss of United States citizenship occurred, but the mere fact of two years' residence would restore Italian nationality even though United States nationality might not be lost. Since we have found that the respondent's paternal grandfather was never naturalized as a United States citizen, it is unnecessary for us to consider this contention of the Service.

**ORDER:** It is ordered that the appeal be and the same is hereby dismissed.